UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re:
**ROBIN C. TORRES**,                                           Chapter 7
    Debtor                                              Case No. 08-14575-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ROBIN C. TORRES**,
    Plaintiff
v.                                                              Adv. P. No. 08-1230
**UNITED STATES DEPARTMENT OF**
**EDUCATION**,
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Complaint filed by Robin C. Torres (the "Debtor") against the United States Department of Education ("DOE"), through which the Debtor seeks a determination under 11 U.S.C. § 523(a)(8) that an educational loan in the approximate amount of $9,000 is dischargeable because it imposes an undue hardship on her and her dependents. The Debtor averred in her Complaint that, based upon her current income and expenses, she could not maintain a minimal living standard for herself and her dependents if she were forced to repay the loan; that she is the primary caregiver for her husband who has a persistent and difficult to manage seizure disorder; and that she

1

has made good faith efforts to repay the loan.

The Court conducted a trial on October 14, 2009. The parties stipulated to the admissibility of five exhibits, and the Defendant introduced three exhibits into evidence. The Debtor was the only witness. The Debtor's husband was in the courtroom, but was not called to testify.

The issue presented is whether the Debtor sustained her burden of establishing the requisite undue hardship, based upon her husband's medical condition and her full-time responsibility for his care. In accordance with Fed. R. Bankr. P. 7052, the Court now makes the following findings of fact and conclusions of law.

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on June 23, 2008. On Schedule B - Personal Property, she listed $100 in a savings account, as well as miscellaneous personal property worth $1,800. The Debtor claimed all her personal property as exempt under 11 U.S.C. §522(b)(2). In her schedules of liabilities, she listed approximately $25,000 in unsecured debt, including $8,169 attributable to her student loan debt. At trial, however, the amount of her student loan debt was shown to be approximately $9,200 with an annual interest rate of 4.375 percent.

On her Schedule I - Current Income of Individual Debtor(s), the Debtor listed $318 in monthly disability income and $367 attributable to food stamps. Additionally, she listed her husband's monthly disability income of $743.70. The Debtor's monthly household income totals $1,428.70. On Schedule J - Current Expenditures of Individual Debtor(s), the

Debtor listed $1,403 in monthly household expenses, including $80 for telephone service, $102 for cable access, and $50 for recreation and entertainment. Per Schedule J, the Debtor pays $246 per month for subsidized rental housing. She also spends $500 a month on food for her herself, her husband and their two children. In an average month, the Debtor estimates that she is left with approximately $25 for incidental expenses. Notably, the Debtor did not claim ownership of a motor vehicle on Schedule B, and she claimed no expenses associated with ownership or maintenance of an automobile on Schedule J, although she listed a monthly transportation expense of $150.

Through her bankruptcy case and the instant adversary proceeding, the Debtor seeks to discharge a student loan debt she incurred obtaining her college degree. In 1999, the Debtor graduated with a B.A. in Business Administration from Stonehill College, where she incurred the student loan debt she now seeks to discharge. Following graduation, the Debtor unsuccessfully attempted to find a position in human resources. The Debtor initially was employed at Specialty Catalog, a wig company. In 2000-2001, she settled for a customer service position with a Boston-based shareholder services firm, EquiServe. The Debtor worked in that position for about a year and made payments with respect to her student loan debt.

Soon thereafter, the Debtor found another position in customer service at Casual Male Big and Tall, a national clothing retailer. Around this time, she took custody of her nephew and her ability to repay her student loan was curtailed. Her circumstances prompted her to consolidate her student loans and in January of 2003 she sought an

3

economic hardship deferment from the William D. Ford Federal Direct Loan Program.

Although the Debtor was employed by Casual Male for almost a year, she quit that job to care for her husband whom she married in 2003. The Debtor, who is now 38 years old, has not worked since. She no longer has custody of her nephew, but she now has two small children of her own.

The Debtor's husband has an extremely violent and unmanageable seizure disorder which he has had since adolescence. He is permanently disabled, and, according to the Debtor, his condition is unlikely to change in the future. The Debtor testified that when she was first married, her husband was receiving Social Security disability and that she and her mother-in-law shared responsibility for his care. As noted above, she also indicated that she had responsibility for the care of her autistic nephew. At present, her mother-in-law is incapable of taking care of her son as she is in a nursing home.

The Debtor described her husband's condition as involving "convulsive seizures," stating "[h]e could be like catatonic. He'll fall. You know, you have to - - somebody has - - you have to be there to get him so he doesn't hurt himself from falling." She added that he requires constant supervision because "when he does go into a seizure that he's in a safe place . . . that he doesn't get hurt, until he comes back to himself." In short, the Debtor is required to constantly monitor her husband and be with him at all times in the event he has a seizure. Her responsibility for her husband's well-being prevents her from working.

The Debtor testified that her husband is under the care of Dr. Donald Schomer, a neurologist at Beth Israel Deaconess Medical Center, Director of its Comprehensive

4

Epilepsy Center, and a Professor of Neurology at Harvard Medical School.  In Plaintiff's Exhibit 1, Dr. Schomer declared that the Debtor's husband requires "constant management and care" for his condition.  As such, and given the couple's financial situation, the Debtor has acted as her husband's full-time medical caregiver since 2003.  The Debtor also acts as the full-time homemaker and caregiver for the couple's two young children, ages four and six.  She testified that her role as a caregiver is a personal matter because her husband is "quite embarrassed by his condition."  She also stated that she would not be able to afford to employ a full-time caregiver if she were to obtain employment.

At trial, the Debtor testified that she receives $112 per month social security disability benefits and that, in addition, her husband receives $793.70 per month.  The Debtor and her family also receive $493 in food stamp benefits.  She stated that she has no money left over at the end of the month after paying the family's expenses, which includes a monthly payment of $273 for public housing.  Although she indicated that she treated her children to "McDonald's maybe once a month," the family never takes vacations.  She added that she is unable to purchase life insurance, is compelled to visit pawn shops on occasion "just to get us by into the following month."  She expressed the view that she did not expect to find employment in the foreseeable future.  She indicated that were her income to increase as a result of gainful employment, she would be forced to incur the cost of care for her husband and day care for her children, while simultaneously losing the social service benefits she now receives, including subsidized rent, health insurance, and food stamps.  Additionally, the Debtor testified that she recently has been diagnosed with

diabetes - -

As a result of her demonstrated economic hardship, the Debtor has consolidated her student loans, and has continually qualified for and has been granted complete forbearance since 2005. The Debtor has continued to ensure that her loans are in forbearance and the record does not indicate an incidence of default. She testified that she did not know whether she would qualify for a government repayment program that would stretch payments out over 30-years in exchange for minimum monthly payments, adding that she could not afford $75-$100 per month.

On cross-examination, the Debtor admitted that neither she nor her husband had applied for any state sponsored assistance for her husband's care. She also admitted that she had not applied for a discharge of her student loan as a result of a total and permanent disability because she would not qualify for such a discharge. The Debtor acknowledged that her parents lived near her and that they have helped her at times, but not with the care of her husband.

**III. POSITIONS OF THE PARTIES**

The Debtor maintains that the student loan debt at issue presents the requisite undue hardship on her and her family because she cannot currently afford to repay the loan and will be prevented from doing so in the future. Citing her current discretionary income of $25, the Debtor contends that she is currently unable to pay the annual accrued interest on the loan. Moreover, as her husband's condition is permanent, the Debtor maintains she will not be able to seek employment in the foreseeable future. Finally, the

6

Debtor maintains that even if she could work, any increase in her income would be off set by the cost of child care and increased food and housing expenses.

Conversely, the DOE argues that the loan does not pose an undue hardship for three reasons. First, the DOE has several repayment options available, including an income contingent repayment plan, that can provide mutually agreeable repayment methods. Second, it asserts that because state services are available to the Debtor for assistance in caring for her husband, she is not technically precluded from finding gainful employment. And lastly, it argues that because the Debtor is an educated and generally healthy woman, finding more lucrative employment in the future is entirely possible.

## IV. DISCUSSION

### A. Applicable Law

The Bankruptcy Code does not permit the discharge of student loan debt "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Courts in the First Circuit have written extensively about the burden of proof under section 523(a)(8) and the appropriate test that must be applied in determining if the debtor has satisfied that burden. Although many courts have adopted the so-called Brunner test, *see* Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir.1987), other courts have utilized the "totality of the circumstances" test. *See* Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554 (8th Cir.2003). The United States Court of Appeals for the First Circuit has not adopted either test. *See* Nash v. Conn. Student Loan Foundation (In re

7

Nash), 446 F.3d 188, 190 (1st Cir. 2006). In affirming this Court's inquiry in Nash, the First Circuit stated:

> Appellees would have us join the nine circuit courts of appeal that have followed the Second Circuit's test set forth in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir.1987) (per curiam). This is a tripartite test, requiring that the debtor show inability, at her current level of income and expenses, to maintain a "minimal" standard of living; the likelihood that this inability will persist for a significant portion of the repayment period; and the existence of good faith efforts to repay the loans.
>
> A facially different test is the Eighth Circuit's totality-of-circumstances test, which would have courts consider the debtor's reasonably reliable future financial resources, his reasonably necessary living expenses, and "any other relevant facts." *See* Long v. Educ. Credit Mgmt. Corp. ( In re Long), 322 F.3d 549, 554 (8th Cir.2003). Appellant contends that this test does not include "good faith effort" under the "other relevant facts" rubric, although bankruptcy courts within the Eighth Circuit are not unanimous on this issue. She urges a "true totality of the circumstances test," focusing solely on the ability of the debtor to maintain a minimal standard of living now and in "the foreseeable future" and still afford to make loan repayments. . . .
>
> We see no need in this case to pronounce our views of a preferred method of identifying a case of "undue hardship." The standards urged on us by the parties both require the debtor to demonstrate that her disability will prevent her from working for the foreseeable future.

Nash, 446 F.3d at 190.

In the absence of a mandatory standard, this Court has repeatedly employed a four-part, non-inclusive inquiry. Burkhead v. United States (In re Burkhead), 304 B.R. 560, 565 (Bankr. D. Mass. 2004); Anelli v. Salle Mae Serv. Corp. (In re Anelli), 262 B.R. 1, 8 (Bankr. D. Mass. 2000). *See also* Nash v. Conn. Student Loan Foundation (In re Nash), No. 02-1466, Slip op. (Bankr. D. Mass. June 18, 2004), *aff'd*, 330 B.R. 323, 327 (D. Mass. 2005). In Burkhead, quoting Anelli, this Court employed the four factors stating:

8

> [T]he Court finds it unnecessary to belabor the merits of each test. Neither the plain language of § 523(a)(8) nor the First Circuit mandate one particular test. Moreover, this Court observes that while courts purport to apply different tests they essentially look to the same factors. Therefore, without accepting one test at the exclusion of the others, the Court adopts the totality of the circumstances approach and will consider several factors placing no undue emphasis on any one of them in determining "undue hardship." Although not an exclusive list, the Court considers relevant, but not necessarily dispositive of the issue, the following:
>
> > (1) whether the Debtor could meet necessary living expenses for herself if forced to repay the loans;
> >
> > (2) whether the Debtor has made good faith efforts to repay the loan;
> >
> > (3) whether the Debtor filed for bankruptcy for the sole reason of discharging student loan debt;
> >
> > (4) whether additional facts and circumstances such as a medical condition, employability and the like weigh in favor of a hardship discharge.

Burkhead, 304 B.R. at 565 (quoting Anelli, 262 B.R. at 8). However alike or different the various tests may be, the overarching similarity between them is the debtor's stringent burden of proof. In keeping with legislative intent, the First Circuit has ruled that this burden may only be shown in "truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents." T.I. Fed. Credit Union v. DelBonis, 72 F.3d 921, 927 (1st Cir.1995)(emphasis added).

B. <u>Analysis</u>

In the instant case, the Debtor's uncontroverted testimony established that her husband's full-time medical requirements preclude her from acquiring regular employment and effectively prevent her from repaying her student loan. Moreover, she

9

established that her husband's condition will persist into the foreseeable future and prevent her from paying the loan during his lifetime. The Debtor also submitted uncontroverted testimony about her household income and expenses, and her Schedules I and J depict an austere lifestyle. The DOE granted the Debtor several forebearances based upon her inability to make payments and economic hardship. For these reasons, the Court finds that the Debtor is currently unable to make payments on her student loan.

The Debtor pointed to her husband's full-time medical requirements as the reason that she will never be able to repay the loan. The DOE did not challenge the letter from Dr. Schomer in which he confirmed that the Debtor's husband is permanently disabled and will require full-time medical attention for the remainder of his life. Because the Court accepts this evidence as to the Debtor's husband's condition, the issue is whether and to what extent a spouse's disability may be considered in regard to undue hardship.

Although this Court has not considered whether a spouse's circumstances can be used to satisfy the fourth factor of the Burkhead/Anelli test, most jurisdictions consider a non-debtor spouse's income when determining undue hardship. *See* White v. United States Dept. of Educ. (In re White), 243 B.R. 498, 509 & n. 9 (Bankr. N.D. Ala.1999) (citing decisions from every circuit). *See also* Grigas v. Sallie Mae Servicing Corp. ( In re Grigas), 252 B.R. 866, 874 (Bankr. D. N.H. 2000). From a practical standpoint, a spouse's economic position may be determinative in assessing whether a Debtor can actually afford to repay a student loan. Consistency and fairness require consideration of a spouse's adverse circumstances, as well as a spouse's income, in evaluating the fourth factor set forth above. *See* Burkhead,

304 B.R. at 565. The Debtor's husband's disability income provides more than half of the family's income; his medical condition, which requires a full-time caregiver, prevents the Debtor from obtaining employment outside the home.

The DOE, however, maintains that even if the spouse's medical condition is considered, the Debtor fails to satisfy the stringent burden required for discharge of student loan debts, relying upon the potential availability of state services to the Debtor's husband and the numerous repayment options available to the Debtor. The DOE did not introduce evidence to establish that in this recessionary period those services are in fact available, and, if so, to what extent. Thus, the Debtor's testimony that the benefit of those services would not necessarily outweigh the burdens, namely increased food, housing, and child care expenses, was unrebutted. Thus, the Court finds that the DOE's speculative reliance upon the availability of social services for the Debtor's husband does not support the conclusion that the Debtor, whose work experience is limited, would obtain gainful employment at 38-years old - - employment that would offset the increased expenses associated with her entry into the job market *and* that would enable her to repay her student loan.

With respect to the numerous repayment options that are available to the Debtor, the DOE principally relies upon the income contingent repayment plan. Recently, Circuit Judge Bye in a separate opinion, joining in part Judge Smith's concurring opinion and dissenting, stated: "I write separately to emphasize that, in accordance with the overwhelming majority of courts, a debtor is not ineligible for a hardship discharge if

capable of making payments under the William D. Ford Federal Direct Student Loan Program's Income Contingent Repayment Plan (ICRP). 20 U.S.C. § 1087e(d)(1)(D); 34 C.F.R. § 685.208; *see also* 20 U.S.C. § 1087e(d) (authorizing the Secretary of Education to implement alternative plans for repayment of student loans)." Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 786 (8th Cir. 2009).[1] The Debtor's schedules and unrebutted testimony establish she is not capable of participating in the program. She has almost no discretionary income now, and it is unlikely she will have any in the foreseeable future. Of course, the Debtor's circumstance may change in the future. A miracle drug could be developed to eliminate the Debtor's husband's seizures; the Debtor's husband could divorce her; the Debtor could win the lottery. All these circumstances could conceivably warrant a different outcome. The Court, however, must assess "undue hardship" based upon the evidence presented at trial. That evidence compels the conclusion that the Debtor

---

[1] Judge Bye added:

> The reasoning of these cases-coupled with a dearth of contrary precedent-convinces me the ICRP is but one factor for consideration when applying the totality-of-the-circumstances test, and does not act as an absolute barrier to the discharge of student loan debt under § 523(a)(8). Further, overemphasizing the impact of the ICRP would be antithetical to the exercise of judicial discretion mandated by § 523(a)(8) and reflected in our totality-of-the-circumstances analysis. Accordingly, I concur in Judge Smith's conclusion that the ICRP is merely a factor to consider under our court's totality-of-the-circumstances test.

571 F.3d at 789 (citing, *inter alia*, In re Barrett, 487 F.3d 353, 364 (6th Cir. 2007); In re Mosley, 494 F.3d 1320, 1327 (11th Cir. 2007); In re Nys, 446 F.3d 938, 947 (9th Cir. 2006); In re Alderete, 412 F.3d 1200, 1206 (10th Cir. 2005); In re Frushour, 433 F.3d 393, 402 (4th Cir. 2005); Cheney v. ECMC, 280 B.R. 648, 665 (N.D. Iowa 2002); In re Korhonen, 296 B.R. 492, 496 (Bankr. D. Minn. 2003)).

sustained her burden of proving that repayment of the student loan would impose an undue hardship upon her and her dependents.

## V. CONCLUSION

In accordance with the foregoing, the Court shall enter a judgment in favor of the Plaintiff and against the Defendant.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 1, 2009
cc: Christopher Alberto, Esq., Samuel P. Reef, Esq.